UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>STEVE METHENY; LEVI PHILLIPS, and MATTHEW JOHN VASSEL; and DOES 1 to 10, inclusive,<br><br>Defendant(s).[1] | No. 2:14-cv-01377-KJM-CMK<br><br><br><br>ORDER |

The current action arose from a fraud claim ("Underlying Action") defendant Matthew John Vassel brought against Carson Helicopters, Inc. ("Carson"), who is not a party to the current action in a related case with the undersigned. *Vassel v. Carson*, No. 13-2520 (E.D. Cal. Dec. 5, 2013). In reaction to the claim Vassel filed against its insured, plaintiff Houston Casualty Company ("HCC"), the insurer of Carson, brought this Declaratory Relief Action ("action") against Vassel. ECF No. 1. HCC seeks several declarations from the court with respect to Carson's insurance policy ("the Policy") with HCC and HCC's duties, if any, under the

---

[1] Mr. Steve Metheny and Mr. Levi Phillips, both Carson employees, have since been terminated from this action. ECF Nos. 22, 28.

1

1  Policy. *Id.* This matter is now before the court on Vassel's pending motion to dismiss or stay
2  this action. ECF No. 30.
3    As explained below, the court DENIES Mr. Vassel's motion to dismiss, but
4  GRANTS his motion to stay this action.

5  I.  INTRODUCTION

6    The fraud claim, referred to here as the Underlying Action, arose from the crash of
7  a helicopter ("the Aircraft") in 2008. ECF No. 42-1 ¶ 11. The Aircraft was supplied by Carson to
8  the U.S. Forest Service ("the USFS"). *Id.* ¶ 10. The Aircraft was covered under the Policy issued
9  to Carson by HCC. *Id*. ¶¶ 13–14. Vassel was not a contract party to the Policy. *See id.* As an
10 employee of the USFS, he witnessed the crash. ECF No. 42-1 ¶¶ 12–14. Vassel brought the
11 fraud claim in the separate proceeding referred to here as the "Underlying Action." That action is
12 filed against Carson before the undersigned, and alleges that the crash resulted from Carson's
13 fraudulent and deceitful conduct. *Id.*

14   As the policy provider for the Aircraft supplied by Carson, HCC investigated the
15 facts and circumstances of the Underlying Action in light of the Policy. ECF No. 1 ¶ 27. HCC
16 concluded it has no duty to defend or indemnify Carson in the Underlying Action because
17 Condition 19 of the Policy, discussed below, voided the coverage. *Id*. Carson agreed and did not
18 dispute HCC's findings from the investigation. *See id.* ¶ 30. HCC brought this action to seek the
19 following declarations:

20   (1) The Underlying Action does not qualify as an "occurrence" or "bodily injury"
21 under the terms and conditions of the Policy; thus, Metheny and Phillips are not entitled to
22 insurance coverage under the Policy, including any defense or indemnity, and HCC does not owe
23 any indemnity to Vassel. *Id.*

24   (2) The Policy is void pursuant to Condition 19. *Id.*

25   (3) No coverage exists under the Policy because any defense or indemnification of
26 Metheny or Phillips for any claims brought in the Underlying Action would violate public policy,
27 and HCC owes no indemnity to Vassel. *Id.*

28

2

(4) Any of the rights to pursue a defense or indemnity of the claims in the Underlying Action have been released; thus, Metheny and Phillips are not entitled to any defense or indemnity related to the Underlying Action, and HCC does not owe any indemnity to Vassel. *Id.*

Vassel's motion seeks to dismiss or, in the alternate, stay this action, given his asserted status as a party with an interest in the Policy. ECF No. 30-1 at 3.

## II. ALLEGATIONS AND FACTUAL BACKGROUND

### A. The Underlying Action: The Alleged Fraud and Crash

Carson previously contracted with the USFS to supply helicopters, including the Aircraft in the Underlying Action, to transport firefighters and their equipment. ECF No. 42-1 ¶ 10. On August 5, 2008, the Aircraft crashed after departing from Helispot 44 located near Weaverville in Trinity County, California. *Id.* ¶ 11. Vassel, an employee with the USFS and manager of Helispot 44, filed the Underlying Action against Carson, Metheny and Phillips for knowingly providing a false calculation of the loaded weight of the Aircraft, in order to obtain the contract with the USFS. *Id.* ¶ 17. Vassel further alleges that Carson knew it was highly probable the Aircraft would be loaded in excess of its maximum payload/weight capacity, causing it to crash. *Id.* ¶ 22. Vassel states that "as a direct, proximate, immediate and foreseeable result of the fraudulent and deceitful conduct of [Carson]," he sustained severe emotional distress from witnessing the crash, among other injuries also relating to the crash. *Id.* ¶¶ 24–27.

### B. The Insurance Policy

HCC issued the Policy to Carson as a Named Insured, effective April 1, 2008 to April 1, 2009. ECF No. 1 ¶ 13. The Policy included coverage for the Aircraft. *Id.* ¶ 14. The Policy also included Condition 19, applicable to all coverages. *Id.* ¶ 18. Condition 19 provides:

> This policy is void if the Named Insured, [Carson], has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Named Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

ECF No. 1 ¶ 37.

On April 13, 2012, HCC entered into a settlement agreement and release with Carson ("the Carson Release") that released HCC from any duty to defend or indemnify.[2] *Id.* ¶ 24. On May 9, 2012, HCC entered into a similar release with Metheny. *Id.* ¶ 25. Phillips also entered into a similar settlement agreement with HCC as did Metheny after HCC filed the Complaint in this action. ECF No. 29 ¶ 5.

    C.     Procedural History and Prior Motions

          1.     Underlying Action[3]

On December 5, 2013, Vassel filed the complaint in the Underlying Action, seeking damages, and alleging fraud and deceit against Carson, Metheny and Phillips. *Vassel v. Carson*, No. 13-2520 (E.D. Cal. Dec. 5, 2013), ECF No. 1. The Underlying Action is also pending in this court before the undersigned. *Id.*

On June 9, 2014, Metheny filed a Motion to Stay the Underling Action pending the final disposition of a federal criminal proceeding filed against him in the District of Oregon on the grounds that he could not defend himself without risking the waiver of his Fifth Amendment right against self-incrimination. *Id.*, ECF No. 38. On July 8, 2014, the parties filed a Notice of Related Case in the Underlying Action, identifying this action. *Id.*, ECF No. 50. On October 28, 2014, this court granted Metheny's Motion to Stay the Underlying Action pending resolution of the criminal suit against him in the District of Oregon. *Id.*, ECF No. 58. On July

---

[2] Under the Carson Release, Carson, on behalf of itself and "persons acting by, through, under or with each of them," released HCC:

> from any and all claims, actions, causes of action, liabilities, compensatory and/or punitive damages, compensation, costs, expenses and fees, whether presently known or unknown, and of any nature whatsoever, whether based on contract, tort, statutory violation or other theory of liability, which claim or claims Carson [and its agents]. . .have had, now have or may hereafter accrue to them arising directly or indirectly in any way from the Carson Policy, Accident, Service Agreement or claims alleged or which could have been alleged in the Coverage Action or the Contract Action against Houston Casualty.

ECF 1 ¶ 24.

[3] The court takes judicial notice of the complaint, answer and order lifting stay on file in the Underlying Action.

15, 2015, Metheny was sentenced in the District of Oregon. *Id.*, ECF No. 69.  On August 5, 2015, following Vassel's report of Metheny's sentencing, the court lifted the stay. *Id.*, ECF No. 70.  On September 14, 2015, the court dismissed Metheny and Phillips from the Underlying Action based on the parties' stipulation. *Id.*, ECF No. 73.

          2.      <u>Declaratory Relief Action</u>

On June 6, 2014, HCC filed the Complaint against Metheny, Phillips and Vassel for Declaratory Relief. ECF No. 1.  On December 19, 2014, based upon a stipulation of the parties and good cause being shown, the court entered judgment in favor of HCC and against Metheny. ECF No. 22.  On February 25, 2015, again by stipulation of the parties, the court entered judgment in favor of HCC and against Phillips. ECF No. 28.  Metheny and Phillips are now both terminated from this action. On July 20, 2015, Vassel filed the pending Motion to Dismiss or Stay. ECF No. 30.  On July 20, 2015, HCC filed its Motion for Summary Judgment, ECF No. 33, and on August 4, 2015, HCC filed an amended Motion for Summary Judgment, ECF No. 38.  The court has granted Vassel's application to defer consideration of the Motion for Summary Judgment to resolve the pending Motion to Dismiss or Stay first. ECF No. 41.  On August 17, 2015, HCC opposed the Motion to Dismiss or Stay. ECF No. 42.  On September 17, 2015, Vassel replied. ECF No. 46.

III.    <u>MOTION TO DISMISS</u>

The court first addresses the Motion to Dismiss because it challenges the court's jurisdiction.  As explained below, the Motion to Dismiss is denied.  The court finds it has jurisdiction, because there is an actual case and controversy.  The court also finds it proper to exercise jurisdiction to afford HCC relief from uncertainty.

The Declaratory Judgment Act ("the Act") states that "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Consistent with this statutory language, the Ninth Circuit has "long held that the district court must first inquire whether there is an actual case or controversy within its

5

jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). Second, if the court finds that an actual case or controversy exists, the court must decide whether to exercise its jurisdiction . . . ." *Id.*, 394 F.3d at 669 (reviewing dismissal of action for declaratory relief; internal citation omitted).

### A.     Case or Controversy

For there to be an actual case or controversy, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and the actual controversy between the parties must relate to a claim upon which relief can be granted. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted); *Leadsinger, Inc. v. BMG Music Pub.*, 429 F. Supp. 2d 522, 533 (C.D. Cal. 2005). The Act's case or controversy requirement is satisfied when the plaintiff has "a real and reasonable apprehension that he will be subject to liability." *Societe de Conditionement en Aluminum v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 944 (9th Cir. 1981). The fact that a defendant's liability may be contingent does not necessarily mean there is no controversy. *Progressive Cas. Ins. Co. v. Dalton*, No. 12-713, 2012 WL 6088313, at *5. Furthermore, the Act allows the district court to litigate a controversy that would "otherwise . . . only be tried in the future." *Societe de Conditionnement*, 655 F.2d at 943. Declaratory judgment essentially provides relief for parties who seek to vindicate interests before they are jeopardized or challenged, before a right of action exists or claim accrues. *Maryland Cas. Co. v. Hubbard*, 22 F. Supp. 697, 699 (S.D. Cal. 1938); *Allied Prop. & Cas. Ins. Co. v. Roberts*, No. 2:11-CV-00740-MCE, 2011 WL 2496039, at *4 (E.D. Cal. June 21, 2011).

In insurance cases, the Supreme Court has determined that an actual controversy can exist between an insurer and the allegedly injured third party even though that third party is not a party to the insurance contract. *Maryland Cas. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273–74 (1941); *see also Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009). The Ninth Circuit has confirmed in recent decisions that a case or controversy exists where the insurer seeks a declaration regarding its duty to defend and indemnify its insured in a pending suit against the insured by a third-party. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir.

1994); *Aetna Cas. and Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992). An insurer's declaratory relief action regarding its duty to defend and indemnify is ripe and justiciable even if the underlying liability action has not proceeded to judgment. *Kearns*, 15 F.3d at 144.

Here, HCC seeks a declaratory judgment that it did not have a duty to defend or indemnify the insured, Carson, and the employees of the insured against the injured party, or indemnify the injured party should he prevail in the Underlying Action on several grounds: that the Underlying Action is not covered under the terms and conditions of the Policy, and that providing defense or indemnification would violate the conditions of the Policy and public policy. *See generally* ECF No. 1.

Because there is a case or controversy, the court has subject matter jurisdiction over this declaratory relief action.

B.  Discretion to Exercise Jurisdiction

The Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory, authority." *Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998). The discretion given to the district court under the Act allows "the court to make a reasoned judgment whether the investment of judicial time and resources in a declaratory action will prove worthwhile in resolving a justiciable dispute." *Takeda Pharmaceutical Co., Ltd. v. Mylan Inc.*, 62 F. Supp. 3d 1115 (N.D. Cal. Aug. 1, 2014) (citing *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991)). Courts have exercised discretion and issued a declaratory judgment when: (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding. *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (internal quotations omitted). "A declaratory relief action serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs." *Lexington Ins. Co. v. Energetic Lath & Plaster, Inc.*, 2015 WL 5436784, at *6 (E.D. Cal. Sep. 15, 2015).[4]

---

[4] HCC also cites *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942), ECF No. 42 at 16, for proposition that if another proceeding was pending in a state court where all the same issues

Here, allowing this action to proceed will clarify the relationship between HCC and Vassel, in terms of whether HCC has an obligation to Vassel if Vassel succeeds in his claims in the Underlying Action. A decision in this action will further clarify whether HCC has a duty to defend or indemnify, and future lawsuits against HCC are precluded if Vassel wins in the Underlying Action. *See* ECF No. 30-1 at 4. Vassel argues he has no interest at this time in expending resources on the "hypothetical issue of whether HCC may owe a duty to indemnify Carson . . . if the Underlying Action proceeds to trial, and if Carson . . . is found liable, and if Vassel is forced to pursue an action [against] HCC[ ] . . . because Carson . . . is unable to pay any judgment." *Id.* at 5 (emphasis omitted). However, the objective of a declaratory relief action is to put such controversies to rest and to afford parties relief from the uncertainties Vassel raises in his argument. A judgment in this action would resolve any dispute HCC and Vassel have with respect to the liabilities that may flow from resolution of the Underlying Action, regardless of who prevails in the Underlying Action, and may also determine whether HCC would need to join the Underlying Action.

Vassel's Motion to Dismiss is DENIED.

## IV. MOTION TO STAY

Although the court finds that HCC has adequately stated a declaratory relief claim, the court nevertheless finds that this action should be stayed.

A federal district court has broad discretion in deciding whether to issue a stay. *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). A "trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the

---

between the parties could be adjudicated, then a declaratory judgment in the federal court was unwarranted, and "gratuitous interference" with state court litigation should be avoided. However, the discretionary standard of *Brillhart* "governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings." *Wilton*, 515 U.S. at 277. Because the Underlying Action is currently pending in federal court before this judge, there is no parallel state court proceeding. Federal abstention is not relevant to the matter at hand.

case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). This rule "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64. Nonetheless, "[w]here it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

In addition, a federal court sitting in diversity over a state law claim, as here, shall apply the law of the state where it is located. *U.S. Fidelity and Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1133–34 (9th Cir. 2011). Thus, the court must apply California law to determine whether imposing a stay is appropriate. *See Samsung Fire & Marine Insurance Co. Ltd. v. AFR Apparel International, Inc.*, No. 14-9642, 2015 WL 5005773, *2 (C.D. Cal. Aug. 21, 2015) (denying motion to stay insurer's action for declaratory relief on the issues of duties to defend or indemnify where underlying action arose in another federal court, after applying state law).

California law states that when an insurer seeks a declaratory judgment regarding the coverage of an insured, and there is an underlying third-party action against the insured, "a stay of the declaratory judgment action pending resolution of the underlying third-party suit is appropriate 'when the coverage question turns on facts to be litigated in the underlying action.'" *Montrose Chemical Corporation v. Superior Court (Montrose I)*, 6 Cal. 4th 287, 301 (1993).[5] A declaratory relief action should proceed only if "the coverage question is logically unrelated to the issues of consequence in the underlying case." *GGIS Ins. Services, Inc. v. Superior Court*, 168 Cal. App. 4th 1493, 1504 (2008) (quoting *Montrose I, supra*, at 301).

---

[5] In *Montrose I*, the court provides the example of a third party seeking damages on account of the insured' negligence, and the insurer seeking to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct as an example. 6 Cal. 4th at 302. The court stated that in such a case, the declaratory relief should be stayed because the "potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious." *Id.*

9

The courts look at three factors when considering whether the coverage question turns upon the facts to be litigated in the underlying action:

> First, [whether] the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; second, [whether] such a circumstance requires the insured to fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions—this effectively undercuts one of the primary reasons for purchasing liability insurance; and, third, [whether] there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former.

*Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979, 39 Cal. Rptr. 2d 520 (1995) (citing *Montrose Chem. Corp. v. Superior Court (Canadian Universal Ins. Co.) (Montrose II)*, 25 Cal. App. 4th 902 (1994), *as modified* (June 30, 1994)); *see e.g., Maryland Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178, 1186 (C.D. Cal. 2014) (coverage question logically related to issues of consequence in underlying case, because court will need to determine whether defendant has stated claim in the underlying action and whether insured acted in manner that violated insurance policy).

Here, this action does not challenge Carson, the insured, and thus does not force it to fight a two-front war, because Carson already settled with the insurance company with respect to the insurance company's duty to defend and duty to indemnify.[6] ECF No. 1 ¶ 24. As noted above, on April 13, 2012, HCC entered into the Carson Release with Carson, under which Carson on behalf of itself and "persons acting by, through, under or with each of them" released HCC from all claims based on contract, tort, statutory violation or other theory of liability. *Id.* ¶ 24. The agreement between HCC and Carson released HCC from any duties to provide a defense or to indemnify Carson on any claims whether the claims arise from direct or indirect liability.

---

[6] HCC alleges in the complaint that "upon information and belief Carson agrees and has acknowledged that no coverage exists under the Policy for the claims alleged in the [Underlying Action] . . . . HCC believes there is no longer any dispute or controversy between HCC and Carson." ECF No. 1 at 13. However, nothing in the complaint precludes Carson from intervening in the lawsuit should it decide to do so.

1    However, the coverage question with respect to Vassel does turn on facts to be
2 litigated in the Underlying Action.  This action and the Underlying Action present a fact pattern
3 similar to that addressed in *Montrose I,* 6 Cal. 4th at 302.  Here, the issues are whether HCC has a
4 duty to defend or indemnify Carson and its employees in the Underlying Action, based partly on
5 Condition 19 in the Policy, and whether HCC need to indemnify Vassel should he prevail in the
6 Underlying Action and subsequently claim an interest in the Policy.  *Id.* ¶ 29.  In the Underlying
7 Action, Vassel alleges that Carson, the insured, acted fraudulently and deceitfully, thereby
8 causing the helicopter crash, and causing Vassel to sustain injuries.  ECF 42-1 ¶¶ 11–13.
9 Specifically, Vassel alleges that "in order to obtain the [ ] contract . . . to provide helicopters to
10 the USFS," Carson "knowingly and intentionally provided false written data," and engaged in
11 other fraudulent conduct and misrepresentation.  *Id.* ¶ 17.  This is the same position HCC presents
12 through this action.  ECF No. 1 ¶ 37.

13    Under claim two of this action, HCC seeks to have the court declare that it has no
14 duty to defend or indemnify Carson in the Underlying Action because Carson committed fraud
15 and misrepresentation on matters concerning the Policy and the subject of the Policy,
16 consequently voiding the Policy under Condition 19.  *Id.*  Specifically, HCC alleges in the
17 Complaint that "Carson, by and through its employees Metheny and Phillips, breached and
18 violated Condition 19 at numerous times" prior to and after the helicopter crash "by concealing
19 and misrepresenting a variety of material facts and circumstances."  *Id.* ¶ 40.  HCC further alleges
20 that "[t]he concealments, misrepresentations and fraud of Carson, Metheny and Phillips, all part
21 of a continuing scheme of wrongdoing, both before and after" the helicopter crash are a clear and
22 material breach of Condition 19.  *Id.* ¶ 61.  Hence, for the court to decide on the second claim of
23 HCC's Complaint in this action, the court will necessarily have to look at whether Carson acted
24 fraudulently and made misrepresentations, the same examination called for in the Underlying
25 Action.

26    Notwithstanding the Carson Release, the facts presented in HCC's Complaint do
27 not plead that Carson admitted to fraudulent conduct and misrepresentation in the Release.
28 Instead, Carson conceded only generally that HCC has no duty to defend or indemnify Carson.  In

Carson's Answer to Vassel's Complaint in the Underlying Action, Carson denies the fraud and deception allegations. ECF No. 47. Thus, if the court does not stay this Action pending resolution of the Underlying Action, the court will necessarily have to decide on an issue that is also an "issue[ ] of consequence" in the Underlying Action. ECF No. 42-1 ¶ 24; ECF No. 47 ¶ 29; *GGIS Ins. Services, Inc.*, 168 Cal. App. 4th at 1504. If the court proceeded in this way, then Carson would be collaterally estopped from litigating the facts related to its alleged fraudulent conduct in the Underlying Action.

Because the coverage question in this action turns on facts to be litigated in the Underlying Action, the court GRANTS Vassel's Motion to Stay.

V. <u>CONCLUSION</u>

The court DENIES Vassel's Motion to Dismiss this action.

The court GRANTS Vassel's Motion to Stay this action, pending resolution of the Underlying Action.

IT IS SO ORDERED.

DATED: February 16, 2016.

_____
UNITED STATES DISTRICT JUDGE